The appellant, James Olen Simpson, Jr., was found guilty of leaving the scene of an accident involving injuries or death without providing the information or assistance required under § 32-10-1, Ala. Code 1975. The trial court sentenced him to 20 years' imprisonment and ordered the sentence to run concurrently with any other sentence that he was serving. The court also ordered him to repay $15,000 that had been paid to the victim by the crime victims compensation fund.
Simpson was indicted on January 30, 2002, and arraigned on March 11, 2002. Because of State budgetary problems, his case was not called for trial until June 19, 2002. Simpson failed to appear on that date, and the trial court found that he had voluntarily waived his right to be present. The State then offered evidence indicating the following: At approximately 7:00 p.m. on August 1, 2001, Jerry Cash and his wife Dana were riding their motorcycles near Lanett. Four or five times, a black automobile drove up behind them and then "back[ed] off." Shortly after Jerry Cash crossed some railroad tracks, the black automobile struck his motorcycle from behind. Dana Cash saw her husband fall onto the ground from the grille of the black automobile. The car accelerated and dragged Cash approximately 150 feet before it stopped; when it stopped its back tire was on Cash's chest. The driver then revved the engine and drove away without rendering any assistance or providing a name, address, vehicle registration, or driver's license. Neither Dana Cash nor Jerry Cash saw the driver of the automobile. Jerry Cash suffered numerous injuries, including deep abrasions, a broken nose, crushed eye sockets, and a dislocated shoulder. Two days after the accident, Jamie Reeves and his wife purchased a black 1989 Chevrolet Beretta automobile from Simpson. He told them that damage on the front of the vehicle had occurred when he drove into a ditch. On August 6, police lieutenant Richard Carter located the Beretta and contacted Simpson. After waiving his Miranda rights, Simpson told Carter that he had hit Jerry Cash accidentally because he did not see Cash's brake light. He said that he heard something being dragged under his car but he thought that it was the victim's motorcycle. Simpson said that he hid the Beretta in a field until he sold it to the Reeveses.
 I.
Simpson's first contention is that the trial court abused its discretion by trying him in absentia. He argues that he had the right to be present at the trial of his case and that he did not affirmatively waive this right. He further argues that the court erred in finding an implied *Page 577 
waiver based upon his failure to appear because, he says, there was no evidence indicating that his absence was voluntary. Simpson argues that Rule 9.1(b)(1)(ii), Ala.R.Crim.P., allows an implied waiver only when a defendant is present at the beginning of trial and then fails to appear at a later date.
The record reflects that the judge called Simpson's case for trial on June 19, 2002. He asked if the defense was ready to proceed, and defense counsel responded, "No, sir, Your Honor." The following discussion then ensued:
 "[DEFENSE COUNSEL]: Judge, my client is not here as the Court is well aware. He has a constitutional right to be present at the trial of his case to hear the evidence presented against him. The court arraigned Mr. Simpson several weeks ago and explained to him his constitutional rights. The Court also explained that if he got out of jail he should stay in contact with me.
 "Mr. Simpson was in jail until approximately three weeks ago. I found that out by going to the jail, and he was not there. He has not contacted me. I have sent him a letter, two letters in fact, Judge, to show that this was his week to go to trial. I have left four messages at the telephone number that is on his bond for him to call me or contact me and be here this morning. He is not here.
 "THE COURT: At arraignment when counsel is appointed, it's my practice and procedure to explain to each defendant . . . that what they say to the lawyer and what the lawyer says to them is between the two of them, and that the worst thing that they could do is lie to their lawyer.
 "I also tell then that another terrible thing that they can do is to disappear on the lawyer. So give the lawyer a good address and hopefully a good telephone number where they can be reached.
 "If the defendant is in jail I specifically instruct the defendant that if they get out of jail on bond, then the first thing they need to do is contact the lawyer to let them know where they're going to be.
 "Now, I am further informed this morning this defendant's bondsman has been contacted. I take the position that Mr. Simpson has decided that the best defense is a good offense and that he has chosen not to appear.
 "So I will take the position that he has waived his right to be present in this case. We're going to go ahead and proceed. There was no indication by any of his family members or from him that something has come up where he's in the hospital or out of state or out of the country receiving the Nobel Prize for whatever reason.
 "[DEFENSE COUNSEL]: I have not heard from any of his family members.
". . . .
 "[PROSECUTOR]: One more thing for the record. It's my recollection at arraignment that the Court notified all persons at that time of the trial dates even though there was a change in the trial schedule due to the money situation that came up. Notices were sent to all persons to be present on June 17.
 "[DEFENSE COUNSEL]: That's very true, Judge. And when the regular scheduled trial term was canceled by the Administrative Office of Courts and by the Supreme Court I notified Mr. Simpson in writing at the jail at that time that that trial term had been canceled and that I would inform him of any new trial date. I did that."
The court proceeded with the voir dire of the jury. At the end of the questioning, *Page 578 
the judge called the attorneys to the bench, and the following occurred:
 "[CLERK]: Tab Smith [Simpson's bondsman] just called. He has talked to Mr. Simpson. He said that he talked to [defense counsel] a couple of weeks ago. I told him it was always up to the attorneys to notify of the trial dates. But he has talked to Mr. Simpson. He's supposed to be calling him back.
"THE COURT: Mr. Simpson needs to be on the road."
The court asked defense counsel when he wanted the jury to return, and counsel said "[a]bout 30 minutes." When the jury returned, Simpson still was not present. The court then proceeded with the trial.
Whether a defendant who is absent at the commencement of trial can be tried inabsentia when there is affirmative evidence that he knew of and voluntarily waived his right to be present by failing to appear is a matter of first impression before this court. Rule 9.1(a), Ala.R.Crim.P., provides that a defendant has "the right to be present at the arraignment and at every stage of the trial, including the selection of the jury, the giving of additional instructions pursuant to Rule 21, the return of the verdict, and sentencing." Section (b) of Rule 9.1 provides, in pertinent part:
 "[A] defendant may waive the right to be present at any proceeding in the following manner:
 "(i) With the consent of the court, by an understanding and voluntary waiver in open court or by a written consent, executed by the defendant and by the defendant's attorney of record, filed in the case.
 "(ii) By the defendant's absence from any proceeding, upon the court's finding that such absence was voluntary and constitutes an understanding and voluntary waiver of the right to be present, and that the defendant had notice of the time and place of the proceeding and was informed of the right to be present."
The Committee Comments to Rule 9.1(b) state:
 "Section (b) allows a defendant to waive the right to be present. The defendant may make an express waiver in open court or may waive the right by voluntary absence from the proceeding. See Taylor v. United States, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174
(1973). . . .
 "Waiver of the right to be present must be clear and unequivocal. Waiver must be affirmative and positive in nature and made by the defendant personally. Consent or acquiescence of a defendant to a waiver of the right cannot be presumed but must affirmatively appear from the record. Berness v. State, 263 Ala. 641, 83 So.2d 613 (1955). Thus, section (b) allows the court to find an implied waiver only when the defendant has been present at the commencement of the trial and fails to appear at some later stage of the trial. Such a waiver may not be inferred if the defendant has never appeared at trial, except in the case of a minor misdemeanor, which by definition carries no threat of imprisonment."
(Emphasis added.)
In Meadows v. State, 644 So.2d 1342 (Ala.Crim.App. 1994), this court considered whether a defendant charged with a felony could be tried inabsentia if he was not present at the beginning of trial. We held that, in the absence of affirmative evidence indicating that a defendant has voluntarily waived his right to be present, a defendant charged with a felony cannot be tried in absentia if he is not present at the beginning of his trial. In reaching this decision, we relied on the Committee Comments to *Page 579 
Rule 9.1(b), quoted above, and on H. Maddox, Alabama Rules ofCriminal Procedure (1990), in which former Justice Hugh Maddox concludes that a court cannot infer a waiver of the right to be present unless the defendant was present at the commencement of the trial. We also relied onCrosby v. United States, 506 U.S. 255 (1993), in which the United States Supreme Court held that the Federal Rules of Criminal Procedure do not permit the trial of a defendant who is not present at the beginning of trial. However, the Crosby Court declined to review Crosby's claim that his trial in absentia was unconstitutional. Therefore, the states may consider this issue in light of their own statutes and procedural rules. The Committee Comments to Rule 9.1 and Justice Maddox's treatise were based on a draft of Rule 9.1 which, like Rule 43, Fed.R.Crim.P., provided that the court may infer waiver of the right to be present if a defendant is absent after his trial has "commenced." However, Rule 9.1 adopted by the Alabama Supreme Court on May 31, 1990[1], does not include the "commenced" language. Rule 9.1(b)(ii), Ala.R.Crim.P., currently provides that the court may find that a defendant's absence was voluntary and that it constituted an understanding and voluntary waiver of his right to be present if the defendant had notice of the time and place of the proceeding and if the defendant was informed of his right to be present. When there is a conflict between a statement found in the committee comments and the plain language of a rule, the rule takes precedence. Exparte Anderson, 644 So.2d 961 (Ala. 1994) (interpreting Rule 27, Ala.R.Civ.P.).
A number of other states have interpreted their rules and statutes so as to make no distinction between a defendant's absence at the beginning of trial and his absence at some point during the trial. See, e.g.,Walker v. State, 338 Md. 253, 658 A.2d 239 (1995) (Maryland rule permits trial court to find waiver of right to be present whenever defendant agrees to or acquiesces in being absent); Commonwealth v. Sullens,533 Pa. 99, 619 A.2d 1349 (1992) (defendant who is absent without cause at time his trial is scheduled may be tried in absentia); Koons v.State, 771 N.E.2d 685 (Ind.Ct.App. 2002) (Indiana rules permit defendant who is absent at commencement of trial to waive right to be present); andState v. Finklea, 147 N.J. 211, 686 A.2d 322 (1996) (once defendant has been given actual notice of trial date, non-appearance on trial date is deemed waiver of right to be present absent showing of justification).
In the present case, the trial court sent Simpson a notice to appear for trial on May 17. Defense counsel gave Simpson written notice that the trial date had been changed to June 19. Simpson's bondsman talked to him about the trial date on the day trial began. Simpson failed to call his bondsman back. The trial court had affirmative evidence that Simpson knew about his trial date and his right to be present at trial but decided not to appear. Compare Meadows v. State, supra (in which the defendant knew that his case was in "ready" status, but his counsel had been unable to contact him after the trial date was set). The trial court did not err in finding that Simpson had voluntarily waived his right to be present by failing to appear. *Page 580 
We note that Simpson also failed to appear for sentencing even though the court continued the sentencing hearing until July 31, 2002. Defense counsel told the court that he had written letters to the addresses Simpson had given him and the bondsman, but he had not been contacted by Simpson or his wife. The trial court stated: "I am of the firm opinion that [Simpson's] position is that the best defense is a good offense. And he has hit the road. We can't confirm that anywhere. Apparently his bondsmen have not been able to locate him." The court then proceeded to sentence the appellant in absentia. Although being tried in absentia is certainly by no means a favored practice, neither can a defendant's intentional avoidance of trial be condoned. Under these facts, the fact that Simpson was notified and was aware of his trial date is clear, as is his disregard for the judicial system.
Simpson has not included any specific argument regarding his absence at sentencing in his appellate brief. In criminal cases in which the death penalty has not been imposed, this court is not obligated to consider issues not presented in briefs on appeal. Rule 45B, Ala.R.App.P. However, we note that, pursuant to Rule 24.1, Ala.R.Crim.P., Simpson had 30 days after his sentence was pronounced to file a motion for a new trial and to offer a reason that he failed to appear. No such motion appears in the record on appeal.
 II.
Simpson's second contention is that the trial court erred in refusing to charge the jury that he had the right to leave the scene of an accident if he believed he was in danger. He argues that he was entitled to the charge because he told Lieutenant Carter that he was scared because the female victim was screaming and calling him a "bastard." He also argues that the victim was a large person who weighed approximately 460 pounds on the date of the accident.
"'The alleged fear of [the] accused that he might have been assaulted if he had stopped to comply with [§ 32-10-1] does not excuse his failure to comply, where there was not any attempt or threat to assault him or the display of any weapon with which an assault might have been committed.'" Isom v. State, 37 Ala. App. 416, 417, 69 So.2d 716, 717
(1954) (quoting 61 C.J.S. Motor Vehicles § 676). In Isom, the court found that an instruction similar to the instruction requested by Simpson was warranted because one of the victims approached Isom's vehicle and stated, "I will kill you." Id. Here, the victim testified that he did not move from the ground until the ambulance arrived, and his wife stated that she stayed with the victim. There was no evidence that either of them approached Simpson or threatened him in any way.
A requested jury instruction is properly refused if it is inapplicable to the facts of the case. Bogan v. State, 529 So.2d 1029 (Ala.Crim.App. 1988). Here, the judge explained that he was refusing the requested instruction because there was no evidence indicating that Simpson was in danger:
 "I don't think it is reasonable to infer from his statement that he was scared of what might happen to him. I think he was just scared. It would scare me to do that. I don't think that it is a defense to this particular charge . . .unless there's some indication that . . . [the victim] . . . pulled a pistol and . . . [began] making threats and that sort of thing."
The court's refusal to give the requested charge was proper because there was no *Page 581 
evidence indicating that the appellant had been "confronted with danger to [his] life or great bodily harm." Isom v. State,37 Ala. at 418, 69 So.2d at 718.
 III.
Simpson's third contention is that the trial court abused its discretion by sentencing him to the maximum sentence of 20 years' imprisonment. He argues that, although his actions were wrong, they did not give rise to a sentence of 20 years. He argues that the court criticized him for failing to appear for trial or sentencing but did not mention that the victim also failed to appear at the sentencing hearing.
When a defendant's sentence is within statutory limits, this court has no jurisdiction to review the sentence imposed by the trial court.Wallace v. State, 408 So.2d 171 (Ala.Crim.App. 1981). Simpson was found guilty of a Class C felony, and the State offered evidence showing that he had one prior felony conviction. Therefore, the circuit court was required to punish him for a Class B felony offense. § 13A-5-9(a)(1), Ala. Code 1975. The court imposed a 20-year sentence, which was within the 2-year to 20-year range prescribed for a Class B felony. § 13A-5-8, Ala. Code 1975. Therefore, this court cannot review the sentence on appeal.
AFFIRMED.
COBB, BASCHAB, SHAW, and WISE, JJ., concur.
[1] The Alabama Rules of Criminal Procedure were adopted May 31, 1990, to be effective January 1, 1991.