ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Jonathan Robinson was convicted in absentia by a Washington County Circuit Court jury of felony third-offense domestic violence. He was sentenced by the circuit court to ten years in the custody of the Mississippi Department of Corrections (MDOC) and ordered to pay court costs and fees totaling $925. Robinson appeals arguing that his conviction and sentence were improper because he was denied his constitutional right to confront his accusers and be present at his sentencing. There being a clear showing in the record that Robinson voluntarily waived his presence at trial by willfully failing to attend, we affirm both his conviction and sentence.
 

 FACTS
 

 ¶ 2. Robinson was indicted by a Washington County grand jury in September 2009, for felony domestic violence of Amber Collins, his estranged girlfriend and the mother of his child. Having been twice convicted of misdemeanor domestic assault within five years prior to his indictment, Robinson’s latest domestic-violence charge constituted a felony offense under Mississippi Code Annotated section 97-3-7(3) (Supp.2010), a conviction of which carries with it a sentence of imprisonment of not less than five years nor more than ten years.
 

 ¶ 3. When the matter came to trial on February 12, 2010, Robinson was not present. Robinson’s trial attorney, Stephen Nick, brought Robinson’s absence to the circuit judge’s attention during a pretrial conference held in the judge’s chambers shortly before voir dire examination was set to begin.
 

 ¶ 4. Nick told the circuit court he had contacted Robinson earlier in the week and informed him that the court had issued a bench warrant for his arrest on February 10, 2010, pursuant to an order issued by the court on December 4, 2009, revoking Robinson’s bond. The record reflects that Robinson had other felony
 
 *200
 
 chai'ges pending in Washington County, which included murder, smuggling contraband into the Greenville’s City Jail, and possession of a stolen firearm. Nick said when he spoke to Robinson, he asked Robinson “if he wanted to turn himself in to the jail,” and Robinson responded: “No, they can pick me up.” Nick then asked the court for a continuance.
 

 ¶ 5. District Attorney Willie Richardson weighed in and asserted to the circuit court that Robinson knew his trial was set to begin on February 12, as the following colloquy reflects:
 

 Richardson: [Nick] asked us for an alternative plea offer for [Robinson]. We gave [Nick] one, and it’s my understanding that [Nick] spoke with [Robinson] even last night. At that point, [Nick] conveyed the alternative plea offer, and [Robinson] denied that. So even at that point last night, as well as this morning, [Robinson] knew to be here this morning.
 

 Nick: Yes, sir, [Robinson] knew last night. He knew this morning. I think he knew when the deputy called him.
 

 [[Image here]]
 

 THE COURT: And for the record, you talked to [Robinson] from this courtroom this morning?
 

 Nick: The deputy made a phone call to [Robinson’s] cell number that I provided, and I spoke to him, and he said he was coming.
 

 THE COURT: All right.
 

 Nick: Then the phone went dead.
 

 THE COURT: All right.
 

 ¶ 6. Afterwards, the circuit court sent sheriffs deputies to find Robinson. They looked for him, to no avail, at his mother’s home, his girlfriend’s home, and his place of employment. The deputies informed Robinson’s mother and his girlfriend, having been instructed by the circuit court to do so, that Robinson could not prevent his trial by deliberately absenting himself from the proceedings.
 

 ¶ 7. Hearing no word from Robinson, the circuit judge proceeded with Robinson’s trial. A jury was impaneled, and the State presented testimonial evidence from Collins and Officer Rosetta Williams, a domestic-violence coordinator with the Greenville Police Department who had investigated Collins’s claim that Robinson had assaulted her on December 26, 2008.
 

 ¶ 8. Collins testified that on December 26, Robinson called her wanting to see their one-month-old baby daughter. Collins took the baby over to Robinson’s mother’s house, where Robinson was staying, and left the baby in Robinson’s care. A few hours later, Robinson called Collins and told her to come get the baby. When Collins arrived back at the Robinson’s mother’s house, she saw Luereatha Edwards’s car parked in the driveway. Collins told the jury that Edwards is the mother of Robinson’s two older children. Collins said that she and Edwards have had altercations in the past and did not get along. According to Collins, she and Robinson had an understanding that Edwards was not to be around her baby. Collins stated that when she walked inside Robinson’s mother’s house, she retrieved her baby who was lying in the baby’s car seat and reminded Robinson about their agreement. Collins said Robinson got upset, told her to leave, and then forcibly escorted her out of the house. Collins said when they got to the doorway, Robinson pushed her outside of the house, which caused her to drop the baby, who was still lying in her car seat. Collins stated that Robinson then started hitting her. Collins said after she saw that her baby was all right, she began fighting back. The fight eventually was broken up by Edwards, who came outside and pulled Robinson back inside
 
 *201
 
 the house. Collins left at that point and called the police.
 

 ¶ 9. Officer Williams testified that during her investigation of the matter, she observed injuries to Collins’s forehead. Officer Williams said she later learned that Robinson had two prior misdemeanor convictions for domestic assault. She said Robinson was arrested for the subject offense on April 1, 2009.
 

 ¶ 10. The jury also heard from Gwanda Súber, the municipal court clerk/administrator for the Greenville Municipal Court. Súber authenticated the records introduced by the State as evidence that Robinson had twice been convicted of misdemeanor domestic assault within five years of the latest charge.
 

 ¶ 11. Nick presented no witnesses following the State’s case-in-chief and rested Robinson’s defense. Both sides then presented their closing arguments. Thereafter, the jury was instructed by the court; it then deliberated and returned a guilty verdict on Robinson’s charge of third-offense domestic violence.
 

 ¶ 12. Immediately following the jury’s verdict, the circuit court issued its sentence, stating for the record the following:
 

 All right. As I have said before, [Robinson] has voluntarily chosen to be absent from the these proceedings today. He was advised, and we don’t need to go back over all of that again.
 

 Initially, I thought since there was a bench warrant out for him to wait until he appears and sentence [sic], but the bench warrant being out does not necessarily mean we’re going to locate him or have him here at any time soon. So I’m going to go ahead and sentence him today.
 

 Under [section 97-3-7(3) ], the maximum is ten years, the minimum is five [years]. The [c]ourt sentences [Robinson] to ten years in the custody of the [MDOC].
 

 As an aggravating circumstance, the [c]ourt considers the fact that he was not present for the trial today, even though he had ample notice to be here, even this morning. He [spoke] with his attorney by telephone and did not appear for the trial of this matter.
 

 ¶ 13. Robinson’s trial counsel timely filed a motion requesting a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied.
 

 ¶ 14. According to the record, Robinson surrendered himself over to authorities on March 23, 2010. This appeal followed.
 

 STANDARD OF REVIEW
 

 ¶ 15. The issue of whether the circuit court erred in trying and sentencing a criminal defendant in absentia is a question of law, which this Court reviews de novo.
 
 Williams v. State,
 
 881 So.2d 963, 965 (¶ 16) (Miss.Ct.App.2004) (citing
 
 Jefferson v. State,
 
 807 So.2d 1222, 1224 (¶ 6) (Miss.2002)).
 

 ISSUE AND ANALYSIS
 

 ¶ 16. Represented by new counsel on appeal, Robinson argues that Mississippi jurisprudence has, traditionally and strictly, distinguished between misdemeanor trials conducted in a defendant’s absence and felony trials so conducted, due to the liberty stakes at interest in the latter. Robinson contends that: the circuit judge “ran a train over an absent defendant and his reluctant counsel,” who Robinson contends “was not anticipating going to trial.” Robinson submits that even if the circuit court had the statutory authority to try him in absentia, “the better discretion would have been to have him picked up and tried at a later date.” Robinson further submits that the circuit
 
 *202
 
 judge “compounded her indiscretion” by immediately sentencing him “to the maximum even though medical attention was not even required for the alleged victim.” Relying on the holding of
 
 Sandoval v. State,
 
 631 So.2d 159 (Miss.1994), Robinson seeks reversal of his conviction for a new trial or, in the alternative, reversal for re-sentencing.
 

 ¶ 17. We decline to reverse. As this Court pointed out in
 
 Sessom v. State,
 
 942 So.2d 234, 237 (¶ 11) (Miss.Ct.App.2006),
 
 Sandoval
 
 was effectively overruled, “as it relates to trial of a felony offender in his absence[,]” when the Legislature amended Mississippi Code Annotated section 99-17-9 on July 1, 2005. The language, “in cases less than felony,” was omitted from the section, which now provides that:
 

 In criminal cases the presence of the prisoner may be waived (a) if the defendant is in custody and consenting thereto, or (b) is on recognizance or bail, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or is in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment made final and sentence awarded as though such defendant were personally present in court.
 

 Miss.Code Ann. § 99-17-9 (Rev.2007).
 

 ¶ 18. Recently, in
 
 Blanchard v. State,
 
 55 So.3d 1074 (Miss.2011), the Mississippi Supreme Court applied this version of section 99-17-9 to facts not unlike those presented here. There, Montae Blanchard, who was charged with armed robbery, was a no show when his jury trial began.
 
 Blanchard,
 
 55 So.3d at 1077 (¶ 11). No mention was made of Blanchard’s absence until after the State’s first witness had testified.
 
 Id.
 
 At that point, a recess was taken and Blanchard’s attorney told the circuit court that Blanchard was aware of the date and time of his trial; his attorney added that when she talked to Blanchard the night before trial, he said he would be present at trial.
 
 Id.
 
 at (¶ 15). Blanchard’s trial proceeded to its conclusion, with no objection from Blanchard’s attorney, nor any request for a continuance.
 
 Id.
 
 The jury found Blanchard guilty of armed robbery.
 
 Id.
 
 at (¶ 13). The circuit court conducted a sentencing hearing the following day, with Blanchard again absent, and thereafter sentenced Blanchard to fifty years’ imprisonment.
 
 Id.
 

 ¶ 19. The supreme court reiterated that “[a]n accused’s right to be present at every stage of his trial is guaranteed by the Sixth Amendment to the United States Constitution and Article 3, Section 26, of the Mississippi Constitution.”
 
 Id.
 
 at 1077-78 (¶ 17) (citations omitted). The court stated, however, that “[tjhis right may be waived based on a defendant’s ‘willful, voluntary, and deliberate absence from trial.’ ”
 
 Id.
 
 at 1078 (quoting
 
 Jay v. State,
 
 25 So.3d 257, 264 (¶ 38) (Miss.2010)). Pointing to section 99-17-9, the supreme court found no plain error with the trial court’s decision to conduct Blanchard’s trial in absentia, and the court affirmed both Blanchard’s conviction and his sentence.
 
 Id.
 
 at 1078 (¶¶ 17-19).
 

 ¶ 20. We point out that Blanchard is somewhat distinguishable from the case before us in that Robinson’s trial counsel, unlike Blanchard’s trial counsel, sought a continuance. This, however, is a procedural distinction without a difference in this instance, as Robinson’s counsel’s reason for seeking a continuance was predicated solely on the fact that his client was not present.
 

 ¶ 21. The circuit court denied counsel’s request and attempted to compel Robinson’s presence via the above-mentioned measures. When that failed, the circuit
 
 *203
 
 judge proceeded with Robinson’s trial based upon the express findings that Robinson was “clearly aware of the date and time of his trial” and that Robinson’s absence from trial was “willful, voluntary, and deliberate.”
 

 ¶ 22. The record sufficiently supports the circuit court’s findings. Thus, we find no error with the circuit judge’s decision to conduct Robinson’s trial in absentia. We also find no error with the circuit judge’s decision to sentence Robinson in absentia. As with the trial itself, a convicted defendant’s presence at sentencing may likewise be waived. Miss.Code Ann. § 99-17-9. Accordingly, this issue is without merit, and we affirm Robinson’s conviction and sentence.
 

 ¶ 23. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF THIRD-OFFENSE DOMESTIC VIOLENCE AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $300 IN ATTORNEY’S FEES AND A $300 BOND FEE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J„ NOT PARTICIPATING.