# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01676-COA

**DELDRICK LAMONT CARROLL A/K/A**                    **APPELLANT**
**DELDRICK CARROLL A/K/A LAMONT**
**CARROLL**

**v.**

**STATE OF MISSISSIPPI**                                            **APPELLEE**


DATE OF JUDGMENT:    10/09/2014
TRIAL JUDGE:     HON. ROBERT WILLIAM ELLIOTT
COURT FROM WHICH APPEALED: BENTON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
         BY: GEORGE T. HOLMES
          JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:  OFFICE OF THE ATTORNEY GENERAL
         BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:   BENJAMIN F. CREEKMORE
NATURE OF THE CASE:   CRIMINAL - FELONY
TRIAL COURT DISPOSITION: CONVICTED OF ARMED ROBBERY AND
         SENTENCED TO TWENTY-SEVEN YEARS
         IN THE CUSTODY OF THE MISSISSIPPI
         DEPARTMENT OF CORRECTIONS
DISPOSITION:     AFFIRMED - 01/12/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. Lamont Carroll appeals his conviction for armed robbery and sentence of twenty-seven years in the custody of the Mississippi Department of Corrections (MDOC). Carroll now appeals, asserting the following assignments of error: (1) the trial court erred in trying him in absentia; (2) the trial court erred in allowing the State to amend the indictment and

charge him as a habitual offender; and (3) his constitutional right to counsel was violated.[1]

Finding no error, we affirm.

## FACTS

¶2.     On April 6, 2012, a large group of people gathered at a house in Benton County, Mississippi, to celebrate Sophia Jackson's birthday. At the party, a group of twelve to fifteen men gathered in a side room of the house to play dice, including Carroll and Gary Patterson. Patterson testified that he brought approximately $1,000 in cash to use during the dice game.

¶3.     As the game began to wind down, only six or seven men were left in the room playing. Patterson testified that as he was about to leave the game, Carroll pulled a gun out and pointed it at Patterson. Patterson dropped his money, and testified that men began jumping out of the window in the room and racing towards the door to get out. Patterson's brother, Reggie, witnessed the event and testified that Carroll asked Patterson, "You know what this is?" In response, Patterson dropped his money. Carroll collected Patterson's money, which Patterson testified amounted to $2,260, and quickly left the house. As he left, Carroll shot his gun in the air twice. Carroll drove off in a truck with two other unidentified men.

¶4.     Patterson testified that after Carroll left, he left Sophia's house with his brother, and they drove to pick up his father, who lived nearby. The three men went to the Benton County Sheriff's Department to report the robbery. Patterson provided a statement to the deputies detailing the robbery. Deputy Joe Batts, the chief deputy of the Benton County Sheriff's

---

[1] Carroll filed a supplemental appellate brief on September 29, 2015, which this Court received and considered. The arguments raised in Carroll's supplemental brief are addressed herein.

Department, testified that the sheriff's deputies were aware of the party at Sophia's house that evening, because two deputies previously responded to a call about a noise complaint. The deputies asked the group to turn the music down, and then left.

¶5. The following Monday, April 9, Deputy Batts called Patterson and asked him to come to the sheriff's department to discuss the incident. Patterson informed Deputy Batts that Carroll, Carroll's brother, James Lewis, and another man from the party, Cornelius Jones, had been trying to call Patterson. Deputy Batts asked Patterson to call the men back so that he could record the conversation. Patterson called Jones and Lewis, and Patterson returned to the sheriff's department on April 11 to call Carroll. During the phone call, Carroll admitted to robbing Patterson, but denied pulling a gun on him. Carroll also assured Patterson that he would try to return the money to him. Deputy Batts recorded all three phone calls.

¶6. Deputy Batts also testified that in the weeks leading up to the trial, he interviewed Sophia's neighbor, who informed Deputy Batts that she heard gunfire on the evening of April 6, 2012.

¶7. On September 6, 2012, a Benton County grand jury indicted Carroll for armed robbery. Carroll subsequently waived arraignment and entered a plea of not guilty. The case was set for trial, and on October 8, 2014, Carroll was tried in absentia, and ultimately convicted of armed robbery. The trial court then sentenced Carroll as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015) to serve twenty-seven years in the custody of the Mississippi Department of Corrections. Carroll filed a motion for

a new trial, which the trial court denied. Carroll now appeals.

## STANDARD OF REVIEW

¶8. This Court reviews a trial court's finding that a defendant waived his constitutional right to be present at trial for an abuse of discretion. Miss. Code Ann. § 99-17-9 (Rev. 2015); *Wales v. State*, 73 So. 3d 1113, 1120 (¶17) (Miss. 2011). This Court also reviews either the admission or exclusion of evidence for an abuse of discretion. *Harrison v. McMillan*, 828 So. 2d 756, 765 (¶27) (Miss. 2002). Even if this Court finds an erroneous admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party. *Gibson v. Wright*, 870 So. 2d 1250, 1258 (¶28) (Miss. Ct. App. 2004). We also acknowledge that "[a] motion for a new trial implicates the discretion of the trial court and seeks to procure a new trial on the theory that . . . the verdict of the jury is against the overwhelming weight of the entire evidence. We . . . will not reverse the trial court's denial of a motion for a new trial unless there has been a manifest abuse of that discretion." *Griffin v. State*, 811 So. 2d 291, 293 (¶5) (Miss. Ct. App. 2001).

¶9. The decision of the trial court "to allow an indictment to be amended is a question of law." *Williams v. State*, 131 So. 3d 1174, 1176-77 (¶6) (Miss. 2014). This Court reviews questions of law de novo. *Id*.

## DISCUSSION

### I. Trial in Absentia

¶10. On appeal, Carroll argues that the trial court erred in allowing him to be tried in absentia. Carroll asserts that the State offered no proof showing that Carroll willfully failed

4

to show for trial. The State, however, responds that nothing in the record shows that Carroll's absence was *not* willful. The State argues that the record shows that Carroll waived arraignment, entered his plea, and knew of his trial date.

¶11. This Court reviews a trial court's finding that a defendant waived his constitutional right to be present at trial for an abuse of discretion. Miss. Code Ann. § 99-17-9; *Wales*, 73 So. 3d at 1120 (¶17). Carroll cites to *Rushen v. Spain*, 464 U.S. 114, 117 (1983), where the United States Supreme Court stated that "the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant." Further, we recognize that the Sixth Amendment to the United States Constitution establishes a criminal defendant's right to be present at trial and "to be confronted with the witnesses against him." However, this right is not absolute and may be waived. *Wales*, 73 So. 3d at 1118 (¶12).

¶12. Mississippi Code Annotated section 99-17-9 provides:

> In criminal cases the presence of the prisoner may be waived (a) if the defendant is in custody and consenting thereto, or (b) is on recognizance or bail, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or is in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment made final and sentence awarded as though such defendant were personally present in court.

The Mississippi Supreme Court has clarified that

> [t]he 2005 amendment to Section 99-17-9 placed the decision to try a felony defendant in absentia within the discretion of the trial court. But this discretion necessarily must be limited by the fact that a felony defendant has a constitutional right to be present at trial. This right is subject to waiver if there is an intentional relinquishment of a known right or privilege.

*Wales*, 73 So. 3d at 1120 (¶17) (internal citations and quotation marks omitted).  The supreme court further explained that it had "held that a defendant's willful, voluntary, and deliberate actions in avoiding trial constituted a waiver."  *Id*.; *see also Jefferson v. State*, 807 So. 2d 1222, 1226 (¶¶14-15) (Miss. 2002).  As stated, this Court reviews a trial court's finding that a defendant waived his constitutional right to be present at trial for an abuse of discretion.  Miss. Code Ann. § 99-17-9; *Wales*, 73 So. 3d at 1120 (¶17).

¶13.    We acknowledge that Carroll waived his arraignment and entered his plea on March 18, 2013.  Although Carroll's trial was ultimately held on October 8, 2014, the record reflects that Carroll's case was set for trial during prior court terms in June 2013, August 2013, October 2013, June 2014, and at the beginning of the then-current term in August 2014.  The record reflects that on the morning of the trial, after voir dire, Carroll's defense attorney moved for a continuance due to Carroll's absence.  The defense attorney explained to the trial court, "I've made inquiry to find out where he is.  [I] can't find him. . . . I have called the phone numbers that I have for him repeatedly, and it goes immediately to a message that says that the number is no longer taking calls."

¶14.    The State responded, arguing that "[Carroll] was notified [of the trial date] in the presence of his attorney.  He understood or at least signified that he understood.  And I believe it was represented yesterday that, once he left work, that he was going to meet with his attorney in preparation for the trial.  He never showed up.  He's not here this morning.  The State stands ready as the case was set."  The defense attorney agreed that the State's assertions were true, and informed the trial court that he and Carroll "actually discussed this

6

matter with the DA's office [on] Monday afternoon with Mr. Carroll present." *See* URCCC 9.02 (trial docket); URCCC 8.04 (arraignment).

¶15. The trial court ultimately denied the defense's motion for a continuance, explaining that Carroll

> knew that the case was set for trial. He knew it last August. He knew it [would] be set for this term. And he knew it Monday, that it would be set for today. And he was conferring with his attorney in court on Monday.
>
> And it's obvious to the court that [Carroll] has intentionally absented himself from this court. And I don't understand why he's not here. But there [is] no indication that he [is] ill or anything [has] happened to him except he just will not answer his attorney's calls or give any reason for his absence.

¶16. Both the supreme court and this Court have affirmed cases with facts similar to those here, where the trial court found that trying the defendant in absentia was appropriate. "The supreme court has held that when a defendant enters an appearance in a trial court at the commencement of trial, he may be tried in absentia if he thereafter fails to attend the proceedings." *Griffin*, 811 So. 2d at 293-94 (¶8) (citing *Poe v. State*, 739 So. 2d 405, 409 (¶16) (Miss. Ct. App. 1999)).[2] In *Wales*, 73 So. 3d at 1117-18 (¶¶9-10), Wales and his attorney discussed his trial date twice the week before trial, but Wales's attorney was unable to reach him by phone the morning of trial. Wales's attorney represented to the court that she had no doubt Wales knew his trial date, and the trial court denied the request for a continuance. *Id*. Then, in *Robinson v. State*, 66 So. 3d 198, 199-200 (¶¶3-5) (Miss. Ct. App. 2011), Robinson also failed to show up for trial prompting his attorney to request a continuance. Robinson's attorney told the court Robinson knew of his trial date the day

---

[2] *See also McKnight v. State*, 738 So. 2d 312, 314-15 (¶5) (Miss. Ct. App. 1999).

7

before and morning of trial, and the trial court denied the request for a continuance. *Id*. In *Arnold v. State*, 93 So. 3d 908, 909-10 (¶¶3-4) (Miss. Ct. App. 2012), Arnold failed to show up the morning of trial, prompting his attorney to request a continuance. After his attorney told the court that he had spoken to Arnold four days before trial and informed Arnold of his trial date, and his calls to Arnold that morning went unanswered, the judge denied the motion for a continuance.

¶17. In *Griffin*, this Court affirmed the trial court's denial of Griffin's motion for a new trial and acknowledged that the appellant, Griffin, failed to "show or allege what input he would have made had he been present that would have changed the outcome of his case." *Griffin*, 811 So. 2d at 295 (¶10). This Court's opinion in *Griffin* reflects that Griffin also failed to "allege that he did not receive a fair and impartial trial by an impartial jury. Griffin merely surmised that his absence must have been prejudicial." *Id*. Like Griffin, Carroll similarly fails to show or allege what input he would have provided, had he been present, that would have changed the outcome of his trial. Carroll also "merely surmised that his absence must have been prejudicial." In this case, Carroll waived his arraignment and entered his plea of not guilty on March 18, 2013. Carroll received notifications regarding his trial date when it was set at the beginning of the then-current term, and Carroll was personally notified in the presence of his attorney at the district attorney's office on the Monday prior to trial. At trial, his attorney represented that Carroll knew of the trial date, and the record reflects that Carroll was free on bond. Since Carroll waived arraignment in this case, entered his plea, and received notice of his trial date, then he possessed no cause to complain of the trial

8

court's entry of a judgment of forfeiture on his bond or receiving the verdict of the jury in his absence. *See Gales v. State*, 64 Miss. 105, 106, 8 So. 167, 167 (1886).[3]

¶18.    After applying the law to the facts of this case, we find no abuse of discretion in the proceedings with the trial below in absentia, or in the trial court's denial of Carroll's motion for a new trial. The record reflects a sufficient factual basis to support the trial court's finding that Carroll waived his right to be present at his trial.

##    II.    Amended Indictment

¶19.    Carroll next argues that the trial court erred in allowing the State to amend Carroll's indictment and charge him as a habitual offender under section 99-19-81. Carroll claims that since he was not present at the pretrial hearing on the motion to amend the indictment, he failed to receive notice as to what charges and sentence he was facing if he exercised his right to a trial.

¶20.    The decision of the trial court "to allow an indictment to be amended is a question of law." *Williams*, 131 So. 3d at 1176-77 (¶6). This Court reviews questions of law de novo. *Id*.

¶21.    Uniform Rule of Circuit and County Court 7.09 states:

---

[3] *See and compare* Fed. R. Crim. P. 43; *Taylor v. United States*, 414 U.S. 17, 20 (1973); *United States v. Muzevsky*, 760 F.2d 83, 83-84 (4th Cir. 1985) (defendant appeared only at his arraignment and was warned by counsel that the trial court might proceed without him if he failed to appear for trial); *Simpson v. State*, 874 So. 2d 575, 579-80 (Ala. Crim. App. 2003) (court found waiver where the defendant was given notice of the time and place of the proceeding and his right to be present; however, the defendant never appeared after receiving written notice and after a conversation with a bail bondsman, and therefore waived his right to be present); *State v. Muniz-Caudillo*, 914 P.2d 1353, 1354 (Ariz. Ct. App. 1996) (defendant's absence after a pretrial conference after being warned that proceedings would proceed in his absence constituted a voluntary waiver of his right to be present at trial).

All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as a[] habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement . . . . Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.

¶22. The Mississippi Supreme Court recently held that "adequate notice is achieved through formal pleadings which include the specific amendment to be offered and which are filed sufficiently in advance of trial to ensure that a defendant will have a 'fair opportunity to present a defense' and will not be 'unfairly surprised.'" *Williams*, 131 So. 3d at 1177 (¶7).

¶23. The record reflects that on October 3, 2014, five days before trial, the State filed a motion to amend the indictment to charge Carroll as a habitual offender pursuant to section 99-19-81. With the motion, the State included copies of Carroll's indictments from two of his prior offenses, both sale of a controlled substance (cocaine). The State also included a copy of Carroll's guilty-plea transcript and the judgment of the court on one of the sale-of-cocaine charges and the sentencing order on the other charge.

¶24. The trial court held a hearing on the matter on the morning of the trial. At the hearing,[4] the State informed the trial court that it filed a motion to amend the indictment the week before the trial. Defense counsel responded that he "did review the allegations with [Carroll]. . . .We can't dispute that he's the fella that was convicted in these instances."

¶25. The defense raised no objection to the State's amendment or the trial court's ruling. The failure to make a contemporaneous objection at trial procedurally bars the issue from

---

[4] The State revealed during the hearing that Carroll actually had three prior felony convictions, instead of just two, as the motion to amend reflected.

being argued on appeal. *Swington v. State*, 742 So. 2d 1106, 1112 (¶14) (Miss. 1999). Nevertheless, the record shows that Carroll's attorney informed the trial court that he had previously discussed with Carroll the allegations asserted by the State in its motion to amend the indictment to charge Carroll as a habitual offender. The record also shows that the motion to amend the indictment stated that the State sought to sentence Carroll to life imprisonment, the maximum term of imprisonment for robbery with a deadly weapon. The record is thus clear that in advance of his set trial date, Carroll received notice of the motion to amend the indictment to include his habitual-offender status pursuant to section 99-19-81 and also of the underlying convictions. Carroll now cannot claim that he was unfairly surprised. We find this assignment of error to be without merit.

### III. Right to Counsel

¶26. Carroll next argues that his constitutional right to counsel was violated by investigators. As stated, Deputy Batts recorded a phone call by Patterson to Carroll where Carroll confessed to robbing Patterson on April 6, 2012. Carroll claims that prior to using Patterson to call Carroll and elicit incriminating statements, the sheriff's department had already drawn up a warrant for Carroll's arrest. Carroll asserts that under Mississippi law, the fundamental right to counsel attaches when a warrant is issued. He argues that the trial court erred in allowing the State to introduce a recording of Patterson and Carroll's phone call into evidence, since Carroll lacked counsel at the time of the phone call. This Court reviews either the admission or exclusion of evidence for an abuse of discretion. *Harrison*, 828 So. 2d at 765 (¶27).

11

¶27. At trial, the State introduced into evidence the recording of the conversation between the victim, Patterson, and Carroll. Both Deputy Batts and Patterson testified that Deputy Batts suggested recording the phone conversation. The defense counsel objected to the admission of the recording into evidence, arguing that the recording was a violation of Carroll's Fifth Amendment right. The trial court observed that the defense failed to file a pretrial motion to suppress the phone call. The defense counsel explained, "I guess my objection would be in the nature of a motion to suppress." The trial court allowed the attorneys to argue the matter outside of the presence of the jury.

¶28. During the hearing on the motion to suppress, Carroll's attorney questioned Deputy Batts about the timing of Carroll's arrest and the recorded phone call between Carroll and Patterson. Deputy Batts testified that the sheriff's department did have a warrant for Carroll's arrest prior to Patterson making the phone call on April 11. However, Deputy Batts stated that he did not remember the exact date that the sheriff's department actually served the warrant for Carroll's arrest, but he did know that the warrant was served after Patterson called Carroll. Deputy Batts also testified that he provided no advice or direction to Patterson about the phone call. Deputy Batts testified that he only recorded the call from Patterson to Carroll. The record clearly shows that Carroll was not in custody when Patterson spoke to him on the phone.

¶29. The trial court denied the defense's objection to admitting the recording into evidence, finding as follows:

> These phone conversations were between Patterson and Carroll. At the very most, they were at the investigative stage of this proceeding, if that. Carroll

had not been accused by [Deputy] Batts of anything.

Carroll was not in custody. He wouldn't feel, under any stretch of [the] imagination, that his freedom was being deprived of—in any significant way. And [Deputy] Batts in no way took part in this interrogation or in this conversation.

And I do not believe that this is a Fifth Amendment violation, and your objection is overruled.

¶30. The State acknowledges that Mississippi Code Annotated section 99-1-7 (Rev. 2015) provides that "[a] prosecution may be commenced . . . by the issuance of a warrant"; however, the State argues that the statute does not mandate that when a warrant is merely drawn, prosecution is commenced. The record is not clear, since it does not contain the arrest warrant, whether at the time of the call the warrant had been signed by a judge and therefore issued, or if the sheriff's department had simply drafted one preparing it to be signed by a judge.

¶31. In *Pierre v. State*, 607 So. 2d 43, 51-52 (Miss. 1992), the Mississippi Supreme Court held that the defendant, Loretta Pierre, possessed no reasonable expectation of privacy when she confessed to a crime while on the phone with her brother, as law enforcement sat nearby. The record reflects that Carroll was not in custody when he received Patterson's (the victim) phone call, and the indictment had not yet been served. Like Pierre, Carroll did not make his inculpatory statement "in response to custodial interrogation or any police action designed to elicit a response." *Id*. at 52. Thus, as in *Pierre*, "the [F]ifth [A]mendment imposed on the trial court no need to ascertain voluntariness, knowledge, and intelligence of waiver." *Id*.; *see also Arizona v. Mauro*, 481 U.S. 520, 527 (1987) (police did not conduct custodial

13

interrogation when they tape-recorded the defendant's conversation with his wife in the presence of an officer); *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980) (*Miranda* safeguards apply only during express police questioning or its functional equivalent). After our review of the record and applicable precedent, we find no abuse of discretion in the trial court's admission of the telephone recording into evidence.

¶32. Additionally, Carroll argues that "[f]or whatever [reason] trial counsel did not object to the admission of the recording under the Sixth Amendment to the United States Constitution, nor was there any reference to the Mississippi Constitution being violated." In *Smith v. State*, 942 So. 2d 308, 320 (¶32) (Miss. Ct. App. 2006), this Court discussed when the Sixth Amendment right to counsel attaches under Mississippi law:

> [U]nder the Sixth Amendment to the United States Constitution, the right to counsel attaches only at a "critical stage" in the proceedings against the accused. A critical stage arises at any confrontation in which the results might affect the course of the later trial and in which the presence of counsel might avert prejudice at trial. The right to counsel attaches earlier under Mississippi law than it does under the Sixth Amendment. In Mississippi, the right to counsel attaches once the proceedings reach an "accusatory stage." An accusatory stage occurs when a warrant is issued or, when the offender is compelled to appear and answer for the offense, as well as by indictment or affidavit.

(Internal citations and quotation marks omitted). Carroll contends that "failure to properly preserve an issue for appellate review could be considered ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984)."

¶33. The supreme court has held that, "[o]rdinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post[]conviction proceedings." *Bowlin v. State*, 154 So. 3d 883, 886 (¶8) (Miss. 2015). In the event that an ineffective-assistance-of-counsel

14

claim is brought on direct appeal, "the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post[]conviction relief." *Id*. Therefore, we dismiss Carroll's claim of ineffective assistance of counsel, and we preserve his right to pursue the issue in a postconviction-relief motion.

¶34. After our review of the record before us, we find no abuse of discretion by the trial court, nor do we find that any of Carroll's substantial rights were adversely affected by the proceedings. Accordingly, we affirm the trial court's judgment.

¶35. **THE JUDGMENT OF THE BENTON COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BENTON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES AND WILSON, JJ., CONCUR.**