# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01438-COA

**EMILY D. BENTHALL A/K/A EMILY BENTHALL**

**APPELLANT**

v.

**STATE OF MISSISSIPPI**

**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/04/2016 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/09/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     Emily Benthall was convicted of burglary of a dwelling. The circuit court sentenced Benthall to serve fourteen years in the custody of the Mississippi Department of Corrections. Benthall's attorney filed no post-trial motions or a notice of appeal. Three years later, Benthall requested permission for an out-of-time appeal, which the circuit court granted.

¶2.     Benthall raises two issues on appeal. First, she argues that the circuit court erred in denying defense counsel's motion for a continuance and proceeding in absentia, stating that there was no evidence establishing that her absence was willful, deliberate, and voluntary.

Second, she argues that the evidence was insufficient to prove that she committed a "breaking" as required for her to be found guilty of burglary. Finding no error, we affirm.

**FACTS**

¶3. Benthall and Sonya Fulton were childhood friends who reconnected in 2014. At the time, Benthall was unemployed. In the fall and winter of 2014, Fulton let Benthall live with her in a studio apartment above her parents' garage. Benthall's presence in the apartment was sporadic. She would stay with Fulton for a few days at a time and then leave. When Benthall was at Fulton's residence, she would assist Fulton in taking care of Fulton's disabled mother, Linda Gale Wedgeworth. Fulton would cook meals for Wedgeworth, and she and Benthall would take the meals from the studio apartment down to the main house and socialize with Wedgeworth in her bedroom while she ate. To do so, the women would have to leave the apartment and enter the house through either the door in the house's attached garage or through the house's front door. Although Benthall was technically living with Fulton in 2014, she was never given a key to either the studio apartment or the main house, and she was not allowed to be there when Fulton or her parents were not home. At the time of the burglary, Benthall was no longer living with Fulton.

¶4. On October 10, 2015, Fulton's daughter got married near Madison, Mississippi, at Lake Caroline. Fulton and her parents left a day early to attend the rehearsal dinner, leaving the house unoccupied. The three attended the wedding on October 10 and returned home that same evening. Fulton originally invited Benthall to attend the wedding and offered her a ride there, but Benthall said that she would "catch a ride with someone else." While Fulton and

2

her parents were away at the wedding, they had no contact with Benthall and did not give her permission to be in the house while they were gone. Fulton also testified that there were only two people who were aware that she and her family would be gone on October 10, one of whom was Benthall.

¶5. Fulton and her parents arrived home from the wedding around 7:30 or 8:00 p.m. They quickly realized that jewelry belonging to Wedgeworth was missing and that the air conditioning unit attached to Wedgeworth's bedroom was "sitting sideways," "turned catty-corner," and "kind of angled out the window." There was a four to six inch gap between the air conditioning unit and the edge of the window. Outside, beneath the window, there was a crushed pet carrier on top of a five-gallon bucket and a can. The window was about three feet off the ground from the outside, and from the inside it was about a foot above a nightstand where Wedgeworth kept her jewelry box, jewelry, and prescription medications. Fulton testified that her parents regularly locked all doors of the home when they were not there and that all the doors were locked when they left to attend the wedding at Lake Caroline. Once she realized that her mother's jewelry was missing and everything had been knocked off the nightstand, Fulton called the Neshoba County Sheriff's Office.

¶6. Investigator John Lilly responded to the call. He testified that upon his arrival, it seemed that the air conditioning unit had been "pushed against," which allowed the items to be taken from the nightstand inside the window. He took a report of all of the missing items but did not go inside the house or take any pictures of the house, window, or air conditioning unit. The following day, Investigator Lilly received information that led him to consider

3

Benthall as a suspect.

¶7.    On October 12, 2015, Investigator Lilly located Benthall at her father's house.  He took her to the police station, where he advised her of her *Miranda*[1] rights and obtained a signed waiver-of-rights form.  Benthall confessed in a written statement.  She wrote that she had been drinking and "took some jewelry that didn't belong to me."  She also stated that she intended to return the jewelry and that she was the only person involved.

¶8.    After giving her statement, Benthall, Investigator Lilly, and the sheriff went to Benthall's son's house to retrieve the stolen jewelry.  The police retrieved the jewelry from Benthall and then returned the jewelry to Wedgeworth and Fulton.  Wedgeworth informed the police that her father's wedding band and a diamond bracelet were still missing.  Benthall was indicted for burglary of a dwelling.

¶9.    The court set trial for July 18, 2016.  On the morning of trial, Benthall failed to appear in court.  At 9:14 a.m., prior to voir dire, Benthall's counsel moved for a continuance because she was not present, stating that "there has been no indication that she's coming," that she "could be in a wreck," and that she "could have had some medical emergency."  The court denied the motion.  During voir dire, the court ordered a recess to further discuss Benthall's whereabouts with law enforcement.  Officer Ralph Sciple stated that he could not give any insight into the whereabouts of Benthall, but he knew law enforcement was looking for her.  Officer Sciple also stated that Benthall's father, who was present in the courtroom, had not seen her since the Friday before trial when he gave her money to buy clothes for the trial.

---

[1] *Miranda v. Arizona* 384 U.S. 436 (1966).

¶10. After voir dire concluded, Benthall's counsel renewed his motion to continue. The court asked defense counsel if he had met with Benthall on Friday, July 15, 2016. Defense counsel responded in the affirmative, stating that the purpose of their Friday meeting was to prepare for trial. He also stated that Benthall was aware of the trial date. Finally, the court asked defense counsel if Benthall was deliberately not in court, to which he responded that any answer he gave "would involve speculation and conjecture" on his part. The court subsequently denied the motion for continuance, finding that Benthall was willfully, deliberately, and voluntarily not before the court.

¶11. The trial proceeded without Benthall. Fulton and her parents testified without Benthall being present. Officer Lilly was the State's fourth witness. During his testimony, Benthall suddenly arrived in court. Neither Benthall nor her attorney gave any explanation for her earlier absence.

¶12. The jury ultimately found Benthall guilty of burglary of a dwelling. Her attorney did not file any post-trial motions or a timely notice of appeal. On September 11, 2019, the circuit court granted Benthall's motion for an out-of-time appeal, and Benthall subsequently filed a notice of appeal.

## DISCUSSION

### 1. Motion for Continuance

¶13. Benthall first argues that the circuit court erred in denying defense counsel's motion for a continuance and proceeding in absentia. She specifically claims that there was no evidence establishing that her absence was willful, deliberate, and voluntary and, thus, no

5

evidence that she waived her constitutional right to be present at trial.

¶14.   The decision to try a felony defendant is within the discretion of the circuit court, but this discretion must be limited by the fact that a person accused of a felony has a constitutional right to be present at trial. *Wales v. State*, 73 So. 3d 1113, 1120 (¶17) (Miss. 2011) (citing U.S. Const. amend. VI; Miss. Const. art. 3, § 26). This constitutional right is subject to waiver if there is "an intentional relinquishment of a known right or privilege." *Id*. The Mississippi Supreme Court has held that "a defendant's willful, voluntary, and deliberate actions in avoiding trial constituted a waiver." *Id*. (citing *Bostic v. State*, 531 So. 2d 1210, 1213 (Miss. 1988); *Jefferson v. State*, 807 So. 2d 1222, 1227 (Miss. 2002)).

¶15.   Mississippi Code Annotated section 99-17-9 (Rev. 2015) allows a circuit court discretion to proceed in absentia if the criminal defendant "is in custody [or] . . . is on recognizance or bail, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, **or is in any way in default for nonappearance** . . . ." (Emphasis added). Here, the circuit court proceeded to trial in Benthall's absence because it determined that Benthall was willfully, deliberately, and voluntarily not before the court. The court made that determination based on its discussion with both Benthall's attorney, her father, and law enforcement regarding Benthall's whereabouts and knowledge of the trial date.

¶16.   In *Robinson v. State*, 66 So. 3d 198, 203 (¶21) (Miss. Ct. App. 2011), this Court affirmed a circuit judge's decision to proceed in the defendant's absence after unsuccessful efforts were made by the local sheriff's office to find the defendant, and the defendant was

6

"clearly aware of the date and time of his trial." *Id*. Thus, this Court found the record sufficiently supported the circuit court's finding that the defendant's absence was willful, voluntary, and deliberate. *Id*. This Court held similarly in *Barksdale v. State*, 176 So. 3d 108, 111 (¶26) (Miss. Ct. App. 2015), and reasoned that the defendant was well aware of his trial date, understood he had to be at trial, and offered no proof that his absence was not willful, deliberate, and voluntary. More recently, in *Carroll v. State*, 196 So. 3d 1054, 1058-59 (¶¶17-18) (Miss. Ct. App. 2016), this Court found no abuse of discretion in the circuit court's decision to proceed in absentia because the defendant was personally notified of the impending trial date in the presence of his attorney, and his attorney stated at trial that the defendant was aware of his trial date.

¶17. Here, the record is clear that Benthall was aware of her trial date, made preparations for her trial, and failed to explain her absence to her attorney or the court. The Friday before trial, Benthall met with her attorney to prepare for trial, and her father gave her money to purchase clothing for the trial. On the day of trial, when she did not arrive in court, Benthall's attorney stated that Benthall knew the trial date. Law enforcement's attempts to locate Benthall were unsuccessful. Upon her arrival, there was no explanation given by Benthall or her attorney as to why she had been late for court and not initially present. For these reasons, the circuit court found Benthall's absence was willful, deliberate, and voluntary. In accordance with our precedent, we find the circuit court did not abuse its discretion in denying Benthall's motion for a continuance and proceeding in her absence.

## 2. Sufficiency of the Evidence

¶18. Benthall next argues that the evidence presented by the State was insufficient to prove

beyond a reasonable doubt that she committed a "breaking" as required for a burglary conviction. In support of her argument, she points out that there was no direct evidence showing that she used any force to reach through the window.

¶19. "A criminal defendant has several procedural vehicles available to [her] for challenging the sufficiency of the evidence." *Myles v. State*, 774 So. 2d 486, 490-91 (¶15) (Miss. Ct. App. 2000). For example, a defendant may challenge sufficiency of the evidence through a motion for directed verdict, a request for a peremptory instruction, or a motion for judgment notwithstanding the verdict. *Id*. at 491 (¶15). "When the sufficiency of the evidence is challenged on appeal, we review the circuit court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court." *Id*. As previously discussed, Benthall did not file any post-trial motions challenging the sufficiency of the evidence. She did, however, file a motion for a directed verdict and request a peremptory instruction on grand larceny. In requesting the grand-larceny instruction, Benthall argued that "a reasonable juror could find that she did, in fact, reach into the window and take the jewelry without moving the air conditioner . . . ." The court ultimately refused to give that instruction.

¶20. When considering the legal sufficiency of the evidence, this Court views the evidence in the light most favorable to the State to determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Martin v. State*, 214 So. 3d 217, 222 (¶15) (Miss. 2017). Credible evidence consistent with guilt must be accepted as true. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993).

¶21. "Burglary of a dwelling has two elements: (1) unlawful breaking and entering, and (2)

intent to commit a crime therein." *Alston v. State*, 287 So. 3d 182, 185 (¶12) (Miss. 2019) (quoting *Jackson v. State*, 90 So. 3d 597, 604 (¶27) (Miss. 2012)); *see also* Miss. Code Ann. § 97-17-33 (Rev. 2014).[2] The "breaking" element of burglary "is conducted by an act of force, regardless of how slight, necessary to be used in entering a building, such as turning a knob, a slight push to further open a door, or raising a latch." *Foster v. State*, 281 So. 3d 229, 233 (¶11) (Miss. Ct. App. 2019) (quoting *Ladd v. State*, 87 So. 3d 1108, 1114 (¶19) (Miss. Ct. App. 2012)). Even if a door "was unlocked or if only slight force was needed to gain entry, such entry has been viewed as forcible for the purposes of our burglary statute." *Harris v. State*, 68 So. 3d 754, 757 (¶11) (Miss. Ct. App. 2011) (quoting *Wheeler v. State*, 826 So. 2d 731, 735 (¶12) (Miss. 2002)).

¶22. In her statement, Benthall admitted she reached through the window and took the jewelry. However, she did not admit to moving the air conditioner or using any other force to take the jewelry. Benthall correctly states that the State only presented circumstantial evidence to prove the element of breaking. "Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such a fact does exist." *Kirkwood v. State*, 52 So. 3d 1184, 1187 (¶10) (Miss. 2011) (quoting *Alexander v. State*, 749 So. 2d 1031, 1036 (¶16) (Miss. 1999)).

¶23. At trial, Fulton testified that when she returned home from the wedding, she

---

[2] Section 97-17-33 states:

Every person who shall be convicted of breaking and entering, in the day or night, [. . .] with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house, [. . .] shall be convicted of burglary[.]

9

immediately noticed that the air conditioning unit in her mother's bedroom was sitting sideways or turned "catty-corner." Likewise, her father testified that the air conditioning unit "was angled out of the window." Investigator Lilly testified that "[i]t appeared that the [air conditioning unit] had been pushed against." The air conditioning unit was not in the same position when Fulton and her parents left town. When they returned, it had been moved, and the jewelry kept close to it was missing. In fact, the stolen items were right within reach of the window where the air conditioner was located. Further, the State offered direct evidence of Benthall's knowledge of Wedgeworth's bedroom and the jewelry's location. The State also offered direct evidence that Benthall was one of only two people who knew that Fulton and her parents would be gone for an extended period of time. Most glaringly, the State provided Benthall's signed statement admitting to reaching in the window and taking the jewelry. Finally, Officer Lilly testified that the jewelry stolen from the area near the air conditioning unit was recovered from Benthall.

¶24. In closing arguments, defense counsel stated, "[Benthall] admitted . . . that she did take the rings, and that's a different crime. But for you to convict her of burglary, you have to be shown positive testimony introduced on the witness stand [that she moved the air conditioner], and we just don't have that today." The jury heard both direct and circumstantial evidence and found Benthall guilty of burglary. "Under our long-established system of criminal justice, the jury is the finder of fact." *McDaniel v. State*, 290 So. 3d 1286, 1291 (¶17) (Miss. Ct. App. 2020) (citing *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000)). "To be clear, . . . neither [the Supreme Court] nor the Court of Appeals sits as [a] thirteenth juror. We do not make independent resolutions of conflicting evidence. Nor

10

do we re-weigh the evidence or make witness-credibility determinations." *Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017) (citation and internal quotation marks omitted). In viewing the evidence in the light most favorable to the State, rational jurors could have found that the State proved each element needed to convict Benthall. Accordingly, we affirm her conviction and sentence.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE AND WESTBROOKS, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J. SMITH, J., NOT PARTICIPATING.**

**McCARTY, J., CONCURRING IN PART AND IN RESULT:**

¶26. I agree that the circumstantial evidence in this case was sufficient to support a finding that Benthall burglarized the victim's home. Furthermore, the prejudice suffered by beginning the trial in absentia was lessened because she did arrive, although late, to her trial.

¶27. However, this does not remedy the problem in this case. The trial court should have confirmed Benthall's temporary absence was willful before proceeding to try her in absentia. "Because our precedent would have our trial courts first grant a continuance before trying a defendant in absentia when there was no actual evidence the defendant willfully avoided trial," I concur in part and in the result only. *Word v. State*, No. 2018-KA-00946-COA, 2019 WL 3928730 *5 (¶26) (Miss. Ct. App. 2019) (McCarty, J., dissenting), *cert. denied*, 289 So. 3d 311 (Miss. 2020).

¶28. In *Word*, this Court affirmed a conviction where a trial court proceeded without the defendant after his counsel merely claimed his client "chose not to attend his trial." *Id*. at *4

11

(¶¶18-19). The defendant's counsel made this declaration even after admitting that he had not actually spoken to his client the morning of trial. *Id.* at (¶29). The *Word* majority ruled the counsel's word alone—and nothing more—was sufficient to both prove that the defendant skipped trial willfully and to warrant continuing trial in his absence. *Id.*

¶29. As I emphasized separately in *Word*, a trial court should disfavor trying a defendant in absentia and instead lean toward granting a continuance "when there [is] no actual evidence the defendant willfully avoided trial[.]" *Id.* at \*5 (¶26); *see Haynes v. State*, 208 So. 3d 4, 6 (¶12) (Miss. Ct. App. 2016) ("[O]ur precedent supports granting [a defendant] a continuance before trying him in absentia."), *abrogated on other grounds by Hampton v. State*, No. 2019-KA-01304-SCT, 2021 WL 218983 (Miss. Jan. 21, 2021); *Jefferson v. State*, 807 So. 2d 1222, 1227 (¶18) (Miss. 2002) ("[W]e carve out an exception based on willful, voluntary and deliberate actions by a defendant in avoiding trial . . . ."). As in *Word*, there was simply no evidence here that Benthall was willfully trying to avoid trial. In fact, the evidence is to the contrary—for while she arrived late, she did arrive.

¶30. I further find persuasive Benthall's argument on appeal that "[a] finding of waiver based on mere evidence that [she] was aware of her trial date and did not ultimately appear[] requires the court to improperly presume a voluntary waiver." We should not presume that a person has willingly forfeited the right to be tried in front of a jury of peers but first inquire into the reasons for the person's absence.

**McDONALD, J., JOINS THIS OPINION.**