774 So.2d 486 (2000)
Johnny MYLES a/k/a Johnny Myles, Jr. and Calvin Walker, Appellants,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00611-COA.
Court of Appeals of Mississippi.
September 12, 2000.
Rehearing Denied December 5, 2000.
*487 Edmund J. Phillips, Jr., Newton, Robert N. Brooks, Carthage, Joe N. Tatum, Jackson, Attorneys for Appellants.
Office of the Attorney General by Wayne Snuggs, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
IRVING, J., for the Court:
¶ 1. Johnny Myles and Calvin Walker were convicted in Scott County Circuit Court of armed robbery. Tried jointly, both were convicted and sentenced to serve thirty years in the custody of the Mississippi Department of Corrections. Aggrieved, both Myles and Walker appeal. Their statement of issues is recited verbatim from their briefs. Myles argues the following
I. The court erred in rejecting appellant's Batson challenge to the State's peremptory strike of venireman Patrick.
Walker argues the following:
I. The trial court erred in allowing the district attorney to excuse without proper cause African American jurors in violation of Calvin Walker's due process rights.
II. The trial court erred overruling appellant's motion to suppress *488 photographic lineup and the resulting in court identification.
III. The evidence was insufficient to sustain Walker's armed robbery conviction.
Finding no reversible error, we affirm.

FACTS
¶ 2. On October 9, 1997, Myles and Walker drove up to David Cubbage while Cubbage was attending to his tractor trailer in a Chevron station parking lot and robbed him at gun point. Myles was the passenger and Walker was the driver. Cubbage testified that Myles got out of the vehicle and approached him. Cubbage, thinking Myles and Walker were seeking information or directions, walked toward Myles. Myles displayed a gun and asked for Cubbage's wallet. When Cubbage did not immediately turn over his wallet, Myles cocked the gun and threatened to kill Cubbage, at which point Cubbage handed his wallet to Myles. Myles took money out of the wallet and threw the wallet to the ground. After taking the money, both Myles and Walker fled the scene. As Myles and Walker sped off, Cubbage got the license number of the truck and reported it to law enforcement. Investigating officers subsequently discovered the vehicle was registered to Walker. Cubbage identified Myles and Walker in a pretrial lineup as well as at trial.

ANALYSIS OF THE ISSUES PRESENTED

I. Batson challenge
¶ 3. Since Myles and Walker both make a Batson challenge, we will combine their separate arguments for discussion.
¶ 4. A defendant asserting a Batson challenge must show that (1) he is a member of a cognizable racial group; (2) that the prosecutor exercised peremptory challenges to excuse a venire person of the defendant's race; and (3) that there is an inference that the venire persons were excluded on account of their race. Collins v. State, 691 So.2d 918, 926 (Miss.1997). "In sum, these components constitute the prima facie showing of discrimination necessary to compel the state to come forward with a neutral explanation for challenging black jurors." Id. The burden then shifts to the State to come forward with a raceneutral explanation for challenging the jurors. Id. However, the State's explanation is not required to rise to the level of justification as required for a challenge for cause. Id.
¶ 5. The State made six peremptory strikes, five against African American jurors and one against a European American juror. However, the State accepted two African American jurors. The State exercised its first three strikes against, Ollie Harper, Elroy McClendon, and a Ms. Johnson, all African American jurors. The State's fourth strike was exercised against a Mr. Roberts, a European American juror. The State's fifth and sixth strikes were exercised against two more African American jurors, Gwendale Strong and Roshae Patrick. The final jury consisted of ten European Americans and two African Americans.
¶ 6. The State gave the following reasons for each strike:
1. Ollie Harper:

BY MR. DUNCAN: My reason for excusing her is that we have prosecuted her sister and sent her to jail, sentenced her to the penitentiary.
2. Elroy McClendon:

BY MR. DUNCAN: Your Honor, my reason for striking Mr. McClendon is that we have convicted more than one of his family members in the past on felonies.
3. Mrs. Johnson:

BY MR. DUNCAN: Excuse Juror No. 5, Johnson, who's also a black juror, Your Honor, and the reason we excuse her is that, during his lifetime, I understand he's now deceased, but we sent her husband to the Penitentiary.

*489 BY MR. DUNCAN: Your honor, I don't recall. It's impossible for me to remember who's related to who. I don't know Mrs. Johnson. I get this information from the law enforcement that, you know, do know Mrs. Johnson.
BY THE COURT: Okay.
BY MR. DUNCAN: And they tell me that, during his lifetime, he's now deceased, that we prosecuted her husband and sent him to the Penitentiary, and I don't think what he was convicted of, and what he was sentenced to, and when it was has any bearing on whether or not it's a race neutral challenge.
4. Gwendale Strong:

BY MR. DUNCAN: We'll excuse No. 7, Strong, who is a black juror. The reason I excuse him, Your Honor, is that the law enforcement officials have informed me that he has a reputation for using drugs; that he's recently been charged with a DUI by local law enforcement, and I also have some personal knowledge of Mr. Strong, and I'm aware of some of his feelings toward Court.
5. Roshae Patrick:

BY MR. DUNCAN: We'll excuse No. 10, Patrick, who is a black juror, Your Honor, and my reason for excluding her is that we have, in the past, convicted several of her family members and kinships, and, as far as specifics, you know, I can't tell you who it was. I just know that, over the years, we've convicted numerous Patricks that the law enforcement tell me that she is related to, and, in fact, we have a Patrick on the docket this term of Court that I think she's related to.
¶ 7. Myles and Walker offered no rebuttal evidence that the reasons given by the State were in fact false but contend that the proffered reasons given by the State were essentially the same for all stricken jurors and were not racially neutral. Myles argues that the reasons given by the prosecution for the peremptory challenges did not relate to an answer given by the prospective jurors. Myles also contends that as to juror Patrick, the prosecutor could not name her convicted kinsmen, describe their relationship to Patrick, or tell what crimes for which the kinsmen were convicted. Walker further argues that the trial court erred by not requiring the State to give specifics regarding the conviction and the convicted persons' relationship to the challenged venire member.
¶ 8. The pivotal question is whether the State was able to present a race-neutral explanation for each of the peremptory strikes. Determining whether a racially discriminatory motive lies under the State's articulated reasons is left to the sole discretion of the trial judge. Collins v. State, 691 So.2d 918, 926 (Miss.1997). Under Mississippi law, the State's use of peremptory strikes against potential jurors who have family members that have been convicted of crimes is completely acceptable as a race-neutral reason and does not violate due process requirements. See Griffin v. State, 607 So.2d 1197, 1203 (Miss.1992); Benson v. State, 551 So.2d 188, 192 (Miss.1989). The trial court did not abuse its discretion in accepting the explanations tendered by the State.
¶ 9. Walker argues in his appellate brief that the trial court overruled his Batson challenges without making any finding of fact as to purposeful discrimination. However, at trial, Walker did not argue that the reasons given by the State were erroneous or pretextual. In fact, all parties seemed to recognize the legitimacy of the reasons offered. Indeed, the record reflects that Walker was merely interested in requiring the State to be more specific concerning the names and dates of conviction of the related kinsmen. The trial court declined to require the prosecutor to be more specific. We likewise decline to require any more specificity in the absence *490 of some evidence or reasons to believe the prosecutor was lying when he specifically said to the court, as an officer of the court, that the prosecutions had in fact taken place.
¶ 10. A trial court's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference and such findings will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence. Benson, 551 So.2d at 188. The trial court was not clearly erroneous in accepting as race-neutral the explanations given by the State, nor was his decision against the overwhelming weight of the evidence. Therefore, we hold that the trial court properly overruled the Batson objection raised by Myles and Walker.

II. Motion to suppress identification testimony
¶ 11. Walker argues the trial court erred by not excluding identification testimony. Walker makes three contentions: (1) the pretrial photographic lineup was unduly suggestive because the victim knew that one of his assailants was extremely light complexioned, and the photo of Walker in the lineup was the only photo showing an extremely light complexioned individual, (2) the background of Walker's photo was the only one not taken with a cinder block wall forming the backdrop, and (3) the in-court identification should have been withheld from evidence because the photo lineup was unduly suggestive.
¶ 12. "If a crime victim identifies a particular suspect in a photographic lineup so constructed that, for any reason, the suspect is singled out or is unreasonably conspicuous, then the identification is deemed tainted and inadmissible." Anderson v. State, 724 So.2d 475, 478 (Miss.Ct.App.1998). Anderson is similar to the case at bar. In Anderson, the defendant claimed that his photo stood out because his photo was taken with a Polaroid camera, whereas the other photos in the line-up were commercially developed and printed. Also, the commercially developed photographs had no border whereas the Polaroid picture had a white border. Anderson argued that anyone viewing this lineup would immediately note the difference in the photographic process and that this, standing alone, made it unduly suggestive that Anderson was the principal suspect.
¶ 13. This Court reviewed the photos and held that there was no possibility of a very substantial likelihood of irreparable misidentification. Anderson, 724 So.2d at 478. We found that the existence of a white border on Anderson's photograph did not make that photograph so distinctive as to improperly single it out. Id. We also found that the other photographs had minor distinctions in shape and size and showed different backgrounds. Id. We concluded that the minor differences in the appearance of Anderson's photograph were not so distinctive as to improperly single him out. Id.
¶ 14. We have reviewed the photographic lineup in the case sub judice and find that the absence of the cinder block in Walker's photograph does not make that photograph so distinctive as to improperly single it out. In fact, one other photo in addition to Walker's also lacks a cinder block wall as a backdrop. We do, however, find that none of the persons in Walker's lineup were as light complexioned as he. However, given the fact that Cubbage obtained the license plate number of the assailants' truck which was found to be registered to Walker, we decline to hold that there was a very substantial likelihood of irreparable misidentification of Walker under the totality of the evidence presented.

III. Sufficiency of the Evidence
¶ 15. A criminal defendant has several procedural vehicles available to him for challenging the sufficiency of the evidence. See Higgins v. State, 725 So.2d *491 220, 224 (Miss.1998). The challenge can be raised in a motion for directed verdict made at the end of the case for the prosecution, a request for a peremptory instruction at the end of all of the evidence or the motion for a directed verdict at that point, or finally, a motion for judgment of acquittal notwithstanding the verdict. Id. Each requires that the court consider all of the evidence before it at the time the motion is considered. Id. When the sufficiency of the evidence is challenged on appeal, we review the circuit court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court. Id. In the case sub judice, Walker requested, at the close of all the evidence, a peremptory instruction which was promptly denied by the trial court.
¶ 16. Our standard of review when considering a trial court's denial of a motion for a directed verdict or a request for a peremptory instruction requires us to accept the prosecution's evidence as true, together with all reasonable inferences that may be drawn from that evidence. If the evidence is sufficient to support the guilty verdict, then the motions were properly overruled by the trial court. Lewis v. State, 573 So.2d 713, 714 (Miss.1990).
¶ 17. Walker was indicted pursuant to Miss.Code Ann. § 97-3-79 (Rev.1994) which states:
Every person who shall feloniously take the personal property of another, in his presence or from his person, which shall have been delivered or suffered to be taken through fear of some injury threatened to be inflicted at some different time to his person or property, or to the person of any member of his family or relative, which fear shall have been produced by the threats of the person so receiving or taking such property, shall be guilty of robbery.
Walker challenges the sufficiency of the evidence by contending that the State failed to prove a specific element of armed robbery. Walker, relying on Jones v. State, 567 So.2d 1189, 1192 (Miss.1990), argues that the State failed to prove a causal connection between the victim's fear and giving up possession.
¶ 18. After careful review of the record, we find that the State produced sufficient evidence to prove a causal connection between Cubbage's fear and giving up possession of his wallet. During direct examination, Cubbage testified to the following:
Q. Okay. Now, you've indicated that this individual, the passenger with the gun, had demanded that you give him your wallet.
A. Yeah.
Q. Tell us what you did.
A. Well, at first, I wasn't going to. You know, I'm looking at the station, and I don't want to give the man my money, you know, so I moved my foot, and that's when he pulled the hammer back and said: I told you I'd kill you if you run. I said, "Whoa! Don't shoot! Don't shoot!" So I handed him my wallet.
During Walker's counsel's cross-examination of Cubbage, Cubbage testified:
Q. Okay. And it would be safe to say or would it be safe to say that you were pretty frightened, or did you feel that you'd be harmed?
A. No. I was mad. I wasn't frightened.
Q. So you were not frightened, and you were not in fear that you were going to receive harm?
A. I was in fear when he pulled the hammer back, because I knew the man was going to shoot then.
The record clearly reflects that Cubbage parted with his wallet out of fear when Myles pulled the hammer back. There was legally sufficient evidence to satisfy the requirement that fear be causally connected to the taking. This assignment of error lacks merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF *492 CONVICTION OF JOHNNY MYLES AND CALVIN WALKER AND SENTENCE OF 30 YEARS EACH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ONE HALF OF THE COSTS OF THIS APPEAL IS ASSESSED TO SCOTT COUNTY AND ONE HALF IS ASSESSED TO APPELLANT CALVIN WALKER.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.