# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00491-COA

JAMES RUSSELL A/K/A JAMES EVERETT
RUSSELL, JR. A/K/A JAMES J. RUSSELL A/K/A
J.J. RUSSELL

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2019 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS W. POWELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/26/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.

### GREENLEE, J., FOR THE COURT:

¶1. In August 2018, James Russell was indicted for trafficking 30 grams or more of methamphetamine in violation of Mississippi Code Annotated section 41-29-139(f)(2)(C) (Supp. 2016). He was also charged as a second drug offender under Mississippi Code Annotated section 41-29-147 (Rev. 2013) and a nonviolent habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015). After a jury trial, Russell was found guilty as charged. The trial court sentenced Russell, as a nonviolent habitual offender and second drug offender, to serve forty years in the custody of the Mississippi Department

of Corrections without eligibility for parole. Russell was also ordered to pay all court costs.

¶2. After the denial of his motion for a new trial, Russell appealed. On appeal, Russell claims (1) the trial court erred by denying his motion for a directed verdict, (2) the jury's verdict was against the overwhelming weight of the evidence, (3) the trial court erred by admitting hearsay evidence, (4) the trial court erred by admitting videos of the controlled purchase, and (5) his counsel was ineffective for failing to request a two-theory jury instruction. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. At Russell's trial, the State presented evidence that on December 7, 2017, a confidential informant purchased 37.66 grams of methamphetamine from Russell at his residence on Clifton Hillsboro Road in Scott County, Mississippi.

¶4. Brad Ellis, the captain of the narcotics division of the Scott County Sheriff's Office, testified that Margaret Carrillo agreed to be a confidential informant in an attempt to "work off" a misdemeanor charge from another county. Carrillo knew Russell and had been to his residence before. So she called Russell and arranged a purchase of methamphetamine. Over defense counsel's objection, Captain Ellis testified that he overheard Carrillo tell Russell that she wanted to purchase approximately 1.5 ounces of methamphetamine.[1]

¶5. Captain Ellis testified that he and Agent Clay McCombs, with the Mississippi Bureau of Narcotics, met with Carrillo before the controlled purchase on December 7, 2017. They searched Carrillo and her vehicle and equipped her with two cameras. Then, from a nearby

---

[1] Although Carrillo agreed to be a confidential informant, Captain Ellis explained that any leniency requested on Carrillo's behalf was not guaranteed.

location, they watched Carrillo drive to and enter Russell's residence, which was located on Clifton Hillsboro Road in Scott County, Mississippi. Captain Ellis testified that Carrillo was inside the residence for approximately thirty minutes. Although they were not able to see inside the residence, they were able to listen to live audio. Captain Ellis testified that after the controlled purchase, Carrillo followed them to a nearby location. Captain Ellis testified that they took possession of two baggies, retrieved the cameras, and obtained a statement from Carrillo. Jacqueline Gledhill, with the Mississippi Forensics Laboratory, later determined that the substance in the two baggies was 37.66 grams of methamphetamine.[2]

¶6.	Agent McCombs's testimony was similar. He testified that prior to the controlled purchase, he searched Carrillo's vehicle extensively. However, because a female agent was not available, he searched Carrillo's person "as good as possible without being intrusive . . . ." Agent McCombs testified that while listening to the live audio, he heard what he believed to be a conversation about a drug transaction. And when he reviewed the videos, he identified Russell as the person who sold the methamphetamine to Carrillo. Agent McCombs testified that the cameras did not capture a "hand-to-hand" transaction. But he explained that people have found "crafty ways" to avoid such transactions. Finally, Agent McCombs testified that he gave Carrillo $950 dollars in official State funds to purchase the methamphetamine. But when he reviewed the videos, he realized Carrillo only paid $750. Agent McCombs testified that he confronted Carrillo about the missing $200, and she ultimately returned it.

---

[2] Gledhill testified as an expert in forensic science and drug-testing analysis at Russell's trial.

3

¶7.    Carrillo also testified at Russell's trial. Carrillo testified that prior to the controlled purchase, Captain Ellis and Agent McCombs searched her and her vehicle and that they equipped her with two cameras—one on her shirt and one on a cell phone. Carrillo testified that when she arrived at Russell's house, they talked for a while, he went outside, and then he went into the kitchen. According to Carrillo, she did not see any drugs when she arrived at Russell's residence, but she did see drugs after Russell returned from being outside. Carrillo testified that Russell prepared two baggies of methamphetamine and gave them to her. She explained that he placed the baggies on the table, she put the money on the table, and then Russell picked up the money. Carrillo testified she and Russell talked for a little while longer, and then she left and turned the evidence over to the officers.

¶8.    During Carrillo's testimony, the State moved to admit into evidence the videos that were recorded during the controlled purchase. At that time, defense counsel objected to the admission of the videos, arguing that they were more prejudicial than probative.[3] Ultimately, the court found that the videos would assist the jury and overruled the objection.

¶9.    As portions of the video were played for the jury, Carrillo testified that the video showed Russell inside the residence. She also testified that Russell went outside and then into the kitchen. Carrillo testified that when Russell returned to the area where she was sitting, he picked up the money and said, "Fourteen and twenty-eight."[4] Then he gave her

---

[3] Defense counsel also stated, "A lot of the video is upside down and kind of distorts the view [for] the jury[.]" The record suggests that the upside-down video was likely from the cell phone.

[4] Agent McCombs explained that there are twenty-eight grams in an ounce, and one half of an ounce is equal to fourteen grams.

two baggies. On cross-examination, defense counsel asked Carrillo if the videos showed the transaction, and Carrillo ultimately replied, "I guess not." Carrillo also acknowledged that Brittany Freeny, the mother of Russell's child, could be seen in parts of the videos.

¶10. On cross-examination, Carrillo admitted that she had purchased drugs from Freeny before. But when asked if Freeny was the person who gave the methamphetamine to her, she responded, "No." And on redirect, Carrillo testified that she was positive that Russell sold the methamphetamine to her. Finally, Carrillo admitted to keeping $200 of the official State funds, but she testified that she returned the money the next day.

¶11. After the State rested its case-in-chief, the defense called Freeny as a witness. According to Freeny, she and Russell were living together on December 7, 2017, and she had previously sold drugs to Carrillo. Freeny initially testified that she did not sell anything to Carrillo on December 7, 2017, but then she testified that she could not remember if she gave the drugs to Carrillo. And then she testified that she might have handed the drugs to Carrillo.

¶12. On cross-examination, Freeny admitted that Russell sometimes hid methamphetamine outside. But she testified that she could not remember if he did so on December 7, 2017. According to Freeny, she could not remember that day at all.

¶13. Finally, Russell testified. Russell did not deny being in the videos. But according to Russell, Freeny gave the methamphetamine to Carrillo on December 7, 2017. Russell testified that he "didn't give [Carrillo] . . . no drugs, no nothing." Although Captain Ellis and Carrillo testified that Carrillo called Russell to arrange the purchase of the methamphetamine, Russell denied that the conversation occurred. And contrary to Freeny's testimony, Russell

testified that he never hid methamphetamine outside. Russell then testified that he sold marijuana, and the money that he picked up and put in his pocket was for marijuana. According to Russell, this was a big misunderstanding. At some point, Russell collected rent at an apartment complex where Carrillo lived. Russell testified that he and Carrillo had previously "got into it" because "we had to kick her out because she wasn't paying rent at first." Russell concluded, "I guess that's why I ended up here[.]"[5]

¶14. After considering the evidence presented at trial, the jury found Russell guilty as charged. On appeal, Russell claims that the trial court erred by denying his motion for a directed verdict, the jury's verdict was against the overwhelming weight of the evidence, the trial court erred by admitting hearsay evidence, the trial court erred by admitting videos of the controlled purchase, and his counsel was ineffective for failing to request a two-theory jury instruction.

## DISCUSSION

### I. Sufficiency of the Evidence

¶15. Russell claims the trial court erred by denying his motion for a directed verdict because the State failed to prove beyond a reasonable doubt that he was the individual who sold methamphetamine to Carrillo on December 7, 2017.

¶16. "A criminal defendant has several procedural vehicles available to him for challenging the sufficiency of the evidence." *Myles v. State*, 774 So. 2d 486, 490 (¶15) (Miss. Ct. App. 2000). A challenge to the sufficiency of the evidence "can be raised in a motion for directed

---

[5] Carrillo testified that she and Russell had a disagreement about a person who was staying in her apartment, but she was never kicked out of her apartment.

verdict made at the end of the case for the prosecution, a request for a peremptory instruction at the end of all of the evidence or the motion for a directed verdict at that point, or finally, a motion for judgment of acquittal notwithstanding the verdict." *Id*. at 491 (¶15). "When the sufficiency of the evidence is challenged on appeal, we review the circuit court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court." *Id*. In this case, Russell requested, at the close of all the evidence, a peremptory instruction, which the trial court denied.[6]

¶17. When reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Reynolds v. State*, 227 So. 3d 428, 436 (¶32) (Miss. Ct. App. 2017) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *overruled on other grounds by Little v. State*, 233 So. 3d 288, 292 (¶¶19-20) (Miss. 2017)). "The issue on appeal is not whether the reviewing court would have found the defendant guilty; rather, the conviction must be affirmed if there was sufficient evidence for 'any rational trier of fact' to have rendered a guilty verdict." *Id*.

¶18. At trial, Captain Ellis testified that he overheard Carrillo call Russell to arrange the controlled purchase of methamphetamine. He testified that prior to the purchase on December 7, 2017, Carrillo was searched and equipped with two cameras. Then he and

---

[6] Russell did not file a motion for judgment of acquittal notwithstanding the verdict. However, in his motion for a new trial, Russell challenged the court's denial of his motion for a directed verdict and his proposed peremptory instruction.

Agent McCombs watched Carrillo enter Russell's residence in Scott County. And after the purchase, they recovered two baggies. Gledhill testified that the two baggies contained 37.66 grams of methamphetamine.

¶19. Carrillo testified that she did not notice any drugs when she entered Russell's residence. But she testified that she noticed drugs after Russell returned from going outside. Additionally, the mother of Russell's child admitted that Russell sometimes hid methamphetamine outside. Carrillo testified that Russell placed two baggies on the table, she placed $750 on the table, and then Russell picked up the money. Finally, Carrillo testified that she was positive that Russell sold the methamphetamine to her.

¶20. The videos, which were played for the jury, show Russell and Carrillo inside the residence. Carrillo can be heard mentioning an "ounce and a half," which Russell repeats. Then it appears as though Carrillo put the money down on the table, and it sounds as though Russell goes outside. When Russell returns, he can be heard saying, "Fourteen and twenty eight." And then it appears as though Russell picked up the money and put it in his pocket.

¶21. On appeal, Russell argues that Carrillo was not a credible witness. However, this is a challenge to the weight of the evidence, not its sufficiency. And as discussed below, it is the jury's responsibility to assess the credibility of witnesses. *Little*, 233 So. 3d at 289 (¶1).

¶22. Russell also argues that there is no video evidence to support any of Carrillo's testimony, and he takes issue with the fact that the baggies were not tested for fingerprints. However, this Court has noted that "the testimony of a single uncorroborated witness is sufficient to sustain a conviction." *Cantrell v. State*, 224 So. 3d 1278, 1281 (¶16) (Miss. Ct.

App. 2017) (quoting *Whitlock v. State*, 47 So. 3d 668, 676 (¶22) (Miss. 2010)). In this case, we have Carrillo's testimony, which was corroborated, in part, by the videos and other testimony. We find that there was sufficient evidence to support the jury's verdict.[7]

¶23. After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

## II. Weight of the Evidence

¶24. Russell claims the trial court erred by denying his motion for a new trial because the jury's verdict was against the overwhelming weight of the evidence.

¶25. When reviewing a challenge to the weight of the evidence, "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Lloyd v. State*, 228 So. 3d 953, 956 (¶9) (Miss. Ct. App. 2017) (quoting *Bush*, 895 So. 2d at 844 (¶18)). The evidence must be viewed "in the light most favorable to the verdict, and we must affirm unless the trial court abused its discretion in denying a new trial." *Id*. (quoting *Bush*, 895 So. 2d at 845 (¶19)).

¶26. Russell argues that he presented evidence that he and Carrillo had previously had a

---

[7] Additionally, our supreme court has held that "[t]o prove sale of a controlled substance, the State need not prove that the defendant personally placed the substance in the hands of the buyer or that the defendant personally profited from its sale." *Spann v. State*, 970 So. 2d 135, 137-38 (¶9) (Miss. 2007); *see also Jackson v. State*, 885 So. 2d 723, 727 (¶14) (Miss. Ct. App. 2004). "As long as the jury is given a proper instruction on aiding and abetting, the State need only prove 'substantial knowing participation in the consummation of a sale or in arranging for the sale." *Id*. at 138 (¶9). Furthermore, "[a]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender." *Id*.

confrontation, he only sold marijuana to Carrillo prior to December 7, 2017, Carrillo had purchased drugs from Freeny prior to December 7, 2017, Freeny could not remember if she sold drugs to Carrillo on December 7, 2017, he testified that Freeny did in fact sell methamphetamine to Carrillo on December 7, 2017, and the videos do not show a hand-to-hand transaction. Russell also reasserts that Carrillo was not a credible witness because she stole $200 of official State funds. And again, he takes issue with the fact that the baggies of methamphetamine were not tested for fingerprints.

¶27. However, appellate courts do not assume the role of juror on appeal. *Little*, 233 So. 3d at 289 (¶1). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id*. The jury listened to the witnesses testify at trial and assessed their credibility. The jury also resolved any conflicts in the evidence and found Russell guilty.

¶28. Considering the evidence presented, we do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Accordingly, the trial court did not err by denying Russell's motion for a new trial.

### III. Hearsay

¶29. At trial, Captain Ellis testified that he overheard the phone conversation between Carrillo and Russell. The prosecutor asked Captain Ellis, "Based off of what you heard . . . what was the amount [of methamphetamine] to be purchased?" Over defense counsel's objection, Captain Ellis testified that he overheard Carrillo tell Russell that she wanted to

10

purchase approximately 1.5 ounces of methamphetamine.

¶30.    Russell claims the trial court erred by admitting the hearsay evidence over his objection. However, the State contends that the testimony was not offered to prove the truth of the matter asserted. We agree. The testimony was not offered to prove the amount of methamphetamine that was later purchased. Rather the testimony was offered to prove that Carrillo talked to Russell about buying methamphetamine from him prior to the controlled purchase. Therefore, the testimony did not constitute inadmissible hearsay. *See Baldwin v. State*, 784 So. 2d 148, 159 (¶40) (Miss. 2001) ("A statement that is not offered to prove the truth of the matter asserted is not hearsay and is, thus, admissible if it meets other evidentiary requirements."). Therefore, the trial court did not abuse its discretion by admitting the evidence. *See Liddell v. State*, 281 So. 3d 34, 35 (¶5) (Miss. Ct. App. 2019) ("The standard of review regarding the admission or exclusion of evidence is abuse of discretion."). This issue is without merit.

### IV.    Videos

¶31.    Russell claims the trial court erred by admitting the videos of the controlled purchase. At trial, Russell objected on the basis that the videos were more prejudicial than probative.

¶32.    "To be admitted, evidence must first be relevant to the issues in the case." *Jones v. State*, 287 So. 3d 995, 1004 (¶32) (Miss. Ct. App. 2019) (citing *Pittman v. State*, 904 So. 2d 1185, 1193 (¶18) (Miss. Ct. App. 2004)). "Mississippi Rule of Evidence 401 states that evidence is relevant if it has a tendency to make a fact more or less probable than it would be without the evidence and if it is of consequence in determining the case." *Id*. at 1005

11

(¶32). But evidence that may be admissible under Rule 401 is still subject to the Rule 403 balancing test. *Id*. at (¶35) (citing *Pitchford v State*, 45 So. 3d 216, 246 (¶125) (Miss. 2010)). Mississippi Rule of Evidence 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

¶33. In this case, the videos corroborated Carrillo's testimony that she was inside the residence with Russell. They also suggest that Russell went outside. Finally, the videos corroborate Carrillo's testimony that when Russell returned, he picked up the money. Therefore, the evidence was relevant. And we cannot say that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Thus, the admission of the videos was not an abuse of discretion.

## V. Ineffective Assistance of Counsel

¶34. Finally, Russell claims that he received ineffective assistance because his trial attorney did not request a two-theory jury instruction.

¶35. "In order to prevail on a claim for ineffective assistance of counsel, [Russell] must show: '(1) that his counsel's performance was deficient, and (2) that this alleged deficiency prejudiced his defense.'" *Thompson v. State*, 119 So. 3d 1007, 1009 (¶5) (Miss. 2013) (quoting *Goff v. State*, 14 So. 3d 625, 655 (¶121) (Miss. 2009)). There is "a rebuttable presumption that trial counsel is competent and his performance was not deficient." *Id*. "Additionally, [Russell] must show that there is a reasonable probability that, but for the errors of his counsel, the judgment would have been different." *Id*. Whether trial counsel's

12

performance was ineffective is based on the totality of the circumstances. *Id*.

¶36.   "[A] two-theory instruction instructs the jury what to do when 'the record supports two or more hypotheses of the crime committed' . . . ." *Johnson v. State*, 235 So. 3d 1404, 1412 (¶24) (Miss. 2017) (quoting *McInnis v. State*, 61 So. 3d 872, 875 (¶11) Miss. 2011)). However, this Court has held that a defendant is entitled to a two-theory jury instruction "only if the case against him is based 'purely or wholly' on circumstantial evidence, as opposed to direct evidence." *Dennis v. State*, 271 So. 3d 722, 729 (¶28) (Miss. Ct. App. 2018); *see also Johnson*, 235 So. 3d at 1413 (¶27) (A two-theory instruction "need be considered only on a case-by-case basis when the jury is presented two reasonable hypotheses or theories, and the evidence is wholly circumstantial."). "For the purposes of a two-theory instruction, a circumstantial-evidence case is one in which there is neither an eyewitness nor a confession to the crime." *Herbert v. State*, 281 So. 3d 851, 857 (¶28) (Miss. Ct. App. 2019) (quoting *Evans v. State*, 119 So. 3d 1084, 1086 (¶10) (Miss. Ct. App. 2013)).

¶37.   Carrillo's testimony as an eyewitness was direct evidence. As discussed, Carrillo testified that Russell placed two baggies on the table and picked up the money. Carrillo also testified that she was positive that Russell sold the methamphetamine to her. In this case, both direct and circumstantial evidence linked Russell to the crime; therefore he was not entitled to a two-theory jury instruction, and his counsel was not deficient for failing to request one. *See Thompson*, 119 So. 3d at 1010 (¶7).

¶38.   **AFFIRMED.**

   **BARNES, C.J., CARLTON AND J. WILSON, P.JJ, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

13